EMMA S. NEWMAN, Appellant, *v.* ARTHUR G. DORE et al., as Trustees, et al., Respondents, Impleaded with Others.

■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■

Argued June 11, 1937; decided July 13, 1937.

■■■■■■■■■■■■■■■■■■■■■

*Edward G. Griffin, Carl Sherman* and *Samuel N. Leiterman* for appellant. Sections 18 and 83 of the revised Decedent Estate Law (Cons. Laws, ch. 13) apply only to estates arising on death and not to property disposed of by non-testamentary instruments. (*Van Cott* v. *Prentice,* 104 N. Y. 45; *N. Y. Life Ins. & T. Co.* v. *Cary,* 191 N. Y. 33; *Pickney* v. *City Bank Farmers Trust Co.,* 292 N. Y. Supp. 835; *Matter of Schrauth,* 292 N. Y. Supp. 923; *Herrmann* v. *Jorgensen,* 263 N. Y. 348; *Matter*

*of McCulloch*, 263 N. Y. 408; *Cunningham* v. *Edward*, 52 Ohio App. 61; *Doctor* v. *Hughes*, 225 N. Y. 305.) Property passed by a living trust may be excluded from an estate. (*Matter of Yarme*, 148 Misc. Rep. 457; 243 App. Div. 693; *Lines* v. *Lines*, 142 Penn. St. 149; *Matter of Young*, 202 Penn. St. 431; *Beirne* v. *Cont. Equitable T. & Tr. Co.*, 307 Penn. St. 570; *Roche* v. *Brickley*, 254 Mass. 584; *Patterson* v. *McClenathan*, 296 Ill. 475; *Robertson* v. *Robertson*, 147 Ala. 311; *Smith* v. *Wold*, 125 Minn. 190; *Matter of Sides*, 119 Neb. 314; *Grilley* v. *Atkins*, 78 Conn. 380; *Harber* v. *Harber*, 152 Ga. 98; *Cowsart* v. *Cowsart*, 136 Ga. 756; *Robb* v. *Washington & Jefferson College*, 185 N. Y. 485; *Dunnett* v. *Shields*, 97 Vt. 419; *Patch* v. *Squires*, 105 Vt. 405.) When a gift is made *inter vivos* with good delivery and the spouse is divested of all use or control of the property, such a gift is good as against a surviving spouse having no inchoate right in the property disposed of. Neither the intention to deprive the survivor nor the fact that deprivation is the inevitable result, standing by themselves, will destroy the validity of such a gift. (*Small* v. *Small*, 56 Kan. 1; *Wright* v. *Holmes*, 100 Me. 508; *Trabbic* v. *Trabbic*, 142 Mich. 387; *Innes* v. *Potter*, 130 Minn. 320; *Potter Title & Trust Co.* v. *Braum*, 294 Penn. St. 432.)

*Jacob H. Gilbert, Susan Brandeis* and *Emanuel Feldberg* for Clara D. Straus, respondent. The trust agreement is a colorable subterfuge, and fraudulent, since it was executed by the husband for the sole purpose of evading and circumventing the provisions of sections 18, 82 and 83 of the Decedent Estate Law, and more particularly the provisions contained in his last will giving to his wife, now his lawful surviving spouse, a life interest in one-third of his net estate, the minimum under the statute. (*Bodner* v. *Feit*, 247 App. Div. 119; *Rubin* v. *Myrub Realty Co.*, 244 App. Div. 541; *Le Strange* v. *Le Strange*, 242 App. Div. 74; *Thayer* v. *Thayer*, 14 Vt. 107; *Grover*

v. *Clover*, 69 Col. 72; *Smith* v. *Smith*, 22 Col. 480; *Payne* v. *Tatem*, 236 Ky. 306; *Evans* v. *Evans*, 78 N. H. 352; *Walker* v. *Walker*, 66 N. H. 390; *Delaney* v. *Valentine*, 154 N. Y. 692; *Byrnes* v. *Owen*, 243 N. Y. 211; *Amherst College* v. *Ritch*, 151 N. Y. 282; *Matter of O'Hara*, 95 N. Y. 403; *Vincent* v. *Kelly*, 118 Misc. Rep. 591.) The high degree of control reserved in the settlor makes the trust agreement testamentary. Upon settlor's death it fails for want of proper statutory execution. (*Russell* v. *Webster*, 213 Mass. 491; *Ga Nun* v. *Palmer*, 159 App. Div. 86.)

*Frank F. Bergenfeld* and *Abraham Brill* for Arthur G. Dore, as surviving trustee and executor, respondent.

LEHMAN, J. The Decedent Estate Law (Cons. Laws, ch. 13, arts. 2, 3) regulates the testamentary disposition and the descent and distribution of the real and personal property of decedents. It does not limit or affect disposition of property *inter vivos*. In terms and in intent it applies only to decedents' *estates*. Property which did not belong to a decedent at his death and which does not become part of his estate does not come within its scope.

The share in the real and personal property of a decedent, not devised or bequeathed, which a husband or wife takes is now fixed by section 83 of the Decedent Estate Law. Prior to the revision of the Decedent Estate Law which took effect on September 1, 1930, a decedent could by testamentary disposition effectively exclude a wife or husband from the share of the estate which would pass to her or him in case of intestacy. That was changed by section 18 of the revised Decedent Estate Law. By that section " a personal right of election is given to the surviving spouse to take his or her share of the estate as in intestacy, subject to the limitations, conditions and exceptions contained in this section." These limitations and exceptions include a case where " the testator has devised or bequeathed in

trust an amount equal to or greater than the intestate share, with income thereof payable to the surviving spouse for life." (Subd. b.) The Legislature has declared that its intention in enacting these sections of the revised Decedent Estate Law was " to increase the share of a surviving spouse in the estate of a deceased spouse, either in a case of intestacy or by an election against the terms of the will of the deceased spouse thus enlarging property rights of such surviving spouse." (Laws of 1929, chap. 229, § 20.)

Ferdinand Straus died on July 1, 1934, leaving a last will and testament dated May 5, 1934, which contained a provision for a trust for his wife for her life of one-third of the decedent's property both real and personal. In such case the statute did not give the wife a right of election to take her share of the estate as in intestacy. She receives the income for life from a trust fund of the amount of the intestate share, but does not take the share. That share is one-third of the *decedent's estate*. It includes no property which does not form part of the estate at the decedent's death. The testator on June 28, 1934, three days before his death, executed trust agreements by which, in form at least, he transferred to trustees all his real and personal property. If the agreements effectively divested the settlor of title to his property, then the decedent left no estate and the widow takes nothing. The widow has challenged the validity of the transfer to the trustees. The beneficiary named in the trust agreement has brought this action to compel the trustees to carry out its terms. The trial court has found that the " trust agreements were made, executed and delivered by said Ferdinand Straus for the purpose of evading and circumventing the laws of the State of New York, and particularly sections 18 and 83 of the Decedent Estate Law." Undoubtedly the settlor's purpose was to provide that at his death his property should pass to beneficiaries named in the trust agreement to the exclusion of his wife. Under the provisions of the

Decedent Estate Law the decedent could not effect the desired purpose by testamentary disposition of his property. The problem in this case is whether he has accomplished that result by creating a trust during his lifetime.

The validity of the attempted transfer depends upon whether " the laws of the State of New York and particularly sections 18 and 83 of the Decedent Estate Law " prohibit or permit such transfer. If the statute, in express language or by clear implication, prohibits the transfer, it is illegal; if the laws of the State do not prohibit it, the transfer is legal. In strict accuracy, it cannot be said that a " purpose of evading and circumventing " the law can carry any legal consequences. " We do not speak of evasion, because when the law draws a line, a case is on one side of it or the other, and if on the safe side is none the worse legally that a party has availed himself to the full of what the law permits. When an act is condemned as an evasion what is meant is that it is on the wrong side of the line indicated by the policy if not by the mere letter of the law." (*Bullen* v. *Wisconsin*, 240 U. S. 625, 630.) In a subsequent case it was said of a defendant: " The fact that it desired to evade the law, as it is called, is immaterial, because the very meaning of a line in the law is that you intentionally may go as close to it as you can if you do not pass it." (*Superior Oil Co.* v. *Mississippi*, 280 U. S. 390, 395, both opinions by Mr. Justice HOLMES.) Under the laws of the State of New York, and particularly sections 18 and 83 of the Decedent Estate Law, neither spouse has any immediate interest in the property of the other. The " enlarged property right " which the Legislature intended to confer is only an expectant interest dependent upon the contingency that the property to which the interest attaches becomes part of a decedent's estate. The contingency does not occur, and the expectant property right does not ripen into a property right in possession, if the owner sells or gives away the property.

(*Herrmann* v. *Jorgensen,* 263 N. Y. 348; *Matter of McColloch,* 263 N. Y. 408.) Defeat of a contingent expectant interest by means available under the law cannot be regarded as an unlawful " evasion " of the law. A duty imperfectly defined by law may at times be evaded or a right imperfectly protected by law may be violated with impunity, but to say that an act, lawful under common law rules and not prohibited by any express or implied statutory provision, is in itself a " fraud " on the law or an " evasion " of the law, involves a contradiction in terms.

That does not mean, of course, that the law may not place its ban upon an intended result even though the means to effect that result may be lawful. The statute gives to a spouse a property right. The question is, how far the statute protects that right even while it remains only expectant and contingent. A right created by law may be protected by law against invasion through acts otherwise lawful. A wrong does not cease to be a wrong because it is cloaked in form of law. The test of legality, then, is whether the result is lawful and the means used to achieve that result are lawful. Here, we should point out that the courts below have not based their decision primarily upon the finding that the trust agreements were executed for the purpose of evading and circumventing the law of the State of New York. The courts have also found, and the evidence conclusively establishes, that the trust agreements were made for the purpose of depriving the decedent's widow of any rights in and to his property upon his death. Under the trust agreements executed a few days before the death of the settlor, he reserved the enjoyment of the entire income as long as he should live, and a right to revoke the trust at his will, and in general the powers granted to the trustees were in terms made " subject to the settlor's control during his life," and could be exercised " in such manner only as the settlor shall from time to time direct in writing." Thus by the trust

agreement which transferred to the trustees the settlor's entire property, the settlor reserved substantially the same rights to enjoy and control the disposition of the property as he previously had possessed, and the inference is inescapable that the trust agreements were executed by the settlor, as the court has found, " with the intention and for the purpose of diminishing his estate and thereby to reduce in amount the share " of his wife in his estate upon his death and as a " contrivance to deprive * * * his widow of any rights in and to his property upon his death." They had no other purpose and substantially they had no other effect. Does the statute intend that such a transfer shall be available as a means of defeating the contingent expectant estate of a spouse?

In a few States where a wife has a similar contingent expectant interest or estate in the property of her husband, it has been held that her rights may not be defeated by any transfer made during life with *intent* to deprive the wife of property, which under the law would otherwise pass to her (*Thayer* v. *Thayer*, 14 Vt. 107; *Evans* v. *Evans*, 78 N. H. 352; *Dyer* v. *Smith*, 62 Mo. App. 606; *Payne* v. *Tatem*, 236 Ky. 306.) In those States it is the intent to defeat the wife's contingent rights which creates the invalidity and it seems that an absolute transfer of all his property by a married man during his life, if made with *other* purpose and intent than to cut off an unloved wife, is valid even though its effect is to deprive the wife of any share in the property of her husband at his death. (*Dunnett* v. *Shields & Conant*, 97 Vt. 419; *Patch* v. *Squires*, 105 Vt. 405.) The rule has been stated that " while the wife cannot complain of reasonable gifts or advancements by a husband to his children by a former marriage, yet, if the gifts constitute the principal part of the husband's estate and be made without the wife's knowledge, a presumption of fraud arises, and it rests upon the beneficiaries to explain away that presumption." (*Payne* v. *Tatem, supra,* p. 308.)

Motive or intent is an unsatisfactory test of the validity of a transfer of property. In most jurisdictions it has been rejected, sometimes for the reason that it would cast doubt upon the validity of all transfers made by a married man, outside of the regular course of business; sometimes because it is difficult to find a satisfactory logical foundation for it. Intent may, at times, be relevant in determining whether an act *is* fraudulent, but there can be no fraud where no *right* of any person is invaded. " The great weight of authority is that the intent to defeat a claim which otherwise a wife might have is not enough to defeat the deed." (*Leonard* v. *Leonard*, 181 Mass. 458, 462, and cases there cited.) Since the law gives the wife only an expectant interest in the property of her husband which becomes part of his estate, and since the law does not restrict transfers of property by the husband during his life, it would seem that the only sound test of the validity of a challenged transfer is whether it is real or illusory. That is the test applied in *Leonard* v. *Leonard* (*supra*). The test has been formulated in different ways, but in most jurisdictions the test applied is essentially the test of whether the husband has in good faith divested himself of ownership of his property or has made an illusory transfer. " The good faith required of the donor or settlor in making a valid disposition of his property during life does not refer to the purpose to affect his wife but to the intent to divest himself of the ownership of the property. It is, therefore, apparent, that the fraudulent interest which will defeat the gift *inter vivos* cannot be predicated of the husband's intent to deprive the wife of her distributive share as widow." (*Benkart* v. *Commonwealth Trust Co.*, 269 Penn. St. 257, 259.) In Pennsylvania the courts have sustained the validity of the trusts even where a husband reserved to himself the income for life, power of revocation and a considerable measure of control. (Cf. *Lines* v. *Lines*, 142 Penn. St. 149; *Potter Title & Trust Co.* v. *Braum*, 294 Penn. St. 482; *Beirne* v. *Con-*

*tinental-Equitable Title & Trust Co.*, 307 Penn. St. 570.) In other. jurisdictions transfers in trust have been upheld regardless of their purpose where a husband retained a right to enjoy the income during his life. (*Rabbitt* v. *Gaither*, 67 Md. 94; *Cameron* v. *Cameron*, 10 Miss. 394; *Gentry* v. *Bailey*, 6 Grattan [Va.] 594; *Hall* v. *Hall*, 109 Va. 117; *Stewart* v. *Stewart*, 5 Conn. 317; *Osborn* v. *Osborn*, 102 Kan. 890.) In some of these cases the settlor retained, also, a power of revocation. In no jurisdiction has a transfer in trust been upheld where the conveyance is intended only to cover up the fact that the husband is retaining full control of the property though in form he has parted with it. Though a person may use means lawfully available to him to keep outside of the scope of a statute, a false appearance of legality, however attained, will not avail him. Reality, not appearance should determine legal rights. (Cf. *Jenkins* v. *Moyse*, 254 N. Y. 319.)

In this case the decedent, as we have said, retained not only the income for life and power to revoke the trust, but also the right to control the trustees. We need not now determine whether such a trust is, for any purpose, a valid present trust. It has been said that " where the settlor transfers property in trust and reserves not only * * * a power to revoke and modify the trust but also such power to control the trustee as to the details of the administration of the trust that the trustee is the agent of the settlor, the disposition so far as it is intended to take effect after his death is testamentary * * *." (American Law Institute, Restatement of the Law of Trusts, § 57, subd. 2.) We do not now consider whether the rule so stated is in accord with the law of this State or whether in this case the reserved power of control is so great that the trustee is in fact " the agent of the settlor." We assume, without deciding, that except for the provisions of section 18 of the Decedent Estate Law the trust would be valid. (Cf. *Robb* v. *Washington & Jeffer-*

*son College,* 185 N. Y. 485; *Van Hesse* v. *MacKaye,* 136 N. Y. 114.) Perhaps " from the technical point of view such a conveyance does not quite take all that it gives, but practically it does." That is enough to render it an unlawful invasion of the expectant interest of the wife. (*Leonard* v. *Leonard, supra; Brownell* v. *Briggs,* 173 Mass. 529.)

Judged by the substance, not by the form, the testator's conveyance is illusory, intended only as a mask for the effective retention by the settlor of the property which in form he had conveyed. We do not attempt now to formulate any general test of how far a settlor must divest himself of his interest in the trust property to render the conveyance more than illusory. Question of whether reservation of the income or of a power of revocation, or both, might even without reservation of the power of control be sufficient to show that the transfer was not intended in good faith to divest the settlor of his property must await decision until such question arises. In this case it is clear that the settlor never intended to divest himself of his property. He was unwilling to do so even when death was near.

The judgment should be affirmed, with costs.

CRANE, Ch. J., HUBBS, LOUGHRAN and RIPPEY, JJ., concur; FINCH, J., concurs in result; O'BRIEN, J., taking no part.

Judgment affirmed.