In the Matter of the Estate of JAY GEORGE IHMSEN, Deceased. *

MARY J. IHMSEN, as One of the Executors, etc., of JAY GEORGE IHMSEN, Deceased, Petitioner, Appellant; THE NATIONAL COMMERCIAL BANK AND TRUST COMPANY OF ALBANY, as Trustee under Trust Agreement, Respondent.

Third Department, March 16, 1938.

* Revg. 161 Misc. 789.

*Herman P. Greene*, for the appellant.

*Arthur L. Andrews*, for the respondent.

McNAMEE, J.   Jay George Ihmsen died leaving a will which was admitted to probate by the Surrogate's Court of Albany county and letters testamentary thereupon were issued to his widow, Mary J. Ihmsen, and National Commercial Bank and Trust Company on October 29, 1936.

On December 17, 1935, Mr. Ihmsen had entered into a contract in writing with the said bank, which was referred to in the pleadings and the testimony as a custodian agreement, according to which a large number of securities were delivered to the bank for the purpose of safekeeping and for the collection and payment over to Mr. Ihmsen of the income therefrom.   The agreement also provided that the property in the hands of the bank at the time of his death should be regarded as a trust fund, to be administered by the bank as therein directed.   A schedule of the securities was attached to the instrument, which included two interest-bearing bank deposits.

The widow contended that these two bank deposits were not properly included in the so-called trust fund, but were part of the assets of the estate to be administered by the executors, and called upon the bank to deliver them to the executors as property of the testamentary estate.   The bank refused, contending that the two deposits were a part of the funds held by them under the contract at the time of Mr. Ihmsen's death, and were, therefore, part of a trust fund to be administered by the bank as trustee.

In a discovery proceeding in the Surrogate's Court the surrogate held that the custodian agreement constituted a trust *inter vivos*, included the two bank deposits in question, that the Surrogate's Court had no jurisdiction, and dismissed the proceeding. From a decree entered upon that decision this appeal is taken.

According to the terms of the custodian agreement the securities were deposited with the bank " to be safely kept, cared for and administrated " as therein directed; the bank was constituted " agent " to collect and pay over the income. Mr. Ihmsen did " at all times retain control " of the funds, and reserved the right to modify or revoke the agreement. And it further provided that " *Either* party hereto may *terminate* this agreement at any time, upon thirty days' notice." It also provided, in the event that the agreement was not terminated prior to the death of Mr. Ihmsen, " the securities then held by the party of the second part [the bank] shall constitute a trust fund and be held " for the benefit of the widow during her life, and thereafter distributed to other persons. And, finally, the contract directed that if any of the beneficiaries were to die before receiving his share, " such share shall be paid unto the heirs at law and next of kin of the person so dying," and that the trustee was to deliver to the executors the money necessary for funeral expenses and taxes payable by Mr. Ihmsen's estate. The document provided that " the Trust hereby created shall be deemed a New York State Trust." The agreement was signed and acknowledged by Mr. Ihmsen and the bank, without witness.

It should be observed that by the explicit terms of the document the bank was constituted an " agent," and that either party could terminate the agreement at will. No language was used in the instrument expressing the intent that the bank should become the owner of the legal title to any of the property mentioned in the schedule during the lifetime of Mr. Ihmsen, nor was there resort to any language from which that intent could be implied. On the contrary, cautious language was employed to prevent that occurrence. At any time during his life the owner did not deliver or assign the property for the purpose of passing title to the trustee, and during that period the bank made no claim of title to the so-called trust fund.

It has long been the law of this State that to constitute a valid trust *inter vivos* four elements were essential: (1) A designated beneficiary; (2) a designated trustee, who must not be the beneficiary; (3) a fund or other property sufficiently designated or identified to enable title thereto to pass to the trustee; and (4) the actual delivery of the fund or other property or a legal assignment thereof to the trustee, with the intention of passing title thereto to him as

trustee. (*Brown* v. *Spohr*, 180 N. Y. 201, 209; *Pinckney* v. *City Bank Farmers Trust Company*, 249 App. Div. 375, 376.) Such appears to be the rule applied generally, as well as in this jurisdiction. (1 Restatement of the Law of Trusts, § 57, pp. 174, 179; 1 Bogert Trusts and Trustees, §§ 103, 104.) It may not be amiss to note also that a trust once created is a legal entity, which becomes operative when adequately constructed, and continues to the end fixed by its own terms. (*Robb* v. *Washington & Jefferson College*, 185 N. Y. 485, 492, 493; *Pinckney* case, *supra*, p. 377.) Under these authorities and others therein referred to the custodian agreement did not create a trust, but an agency, and it terminated upon Mr. Ihmsen's death. It was not executed in the manner or form required by the Statute of Wills, and was, therefore, without testamentary effect. The property referred to in the schedule attached to the document became assets of the mortuary estate of Mr. Ihmsen upon his death, to be administered by his executors.

The decree should be reversed and the matter remitted to the Surrogate's Court to proceed in harmony with this opinion, with costs to both parties payable out of the estate.

HILL, P. J., RHODES, CRAPSER and BLISS, JJ., concur.

Decree reversed on the law and facts and matter remitted to the Surrogate's Court to proceed in harmony with opinion, with costs to both parties payable out of the estate.